**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

**LORENA MINIX, BRENDA SIMS** )
)
**And LINDA SIMS,** )
       **Plaintiffs,** )
)       **CIVIL ACTION NUMBER:**
**v.** )       **3:05-CV685-M**
)
**JELD-WEN, INC. AND** )
**RICHARD FETNER,** )
       **Defendants.**

## ANSWER

NOW INTO COURT, through undersigned counsel, defendant, JELD-WEN, inc., respectfully denies each and every allegation of fact, conclusion of law, and request for relief by plaintiffs, LORENA MINIX, BRENDA SIMS, and LINDA SIMS, unless hereinafter expressly admitted as follows:

### FIRST DEFENSE

Plaintiffs failed to state a claim upon which relief may be granted under Title VII because no co-workers of plaintiffs were allowed to create a sexually hostile, abusive working environment.

### SECOND DEFENSE

Alternatively, plaintiffs failed to state a claim upon which relief may be granted under Title VII for sexual harassment by an alleged Title VII supervisor because they failed to timely report any alleged improper

conduct under JELD-WEN's reasonable, widely published anti-harassment procedures that plaintiffs knew about and understood. Further, when plaintiffs did belatedly report several allegedly improper instances of misconduct, JELD-WEN promptly took reasonable corrective action to address the alleged misconduct.

## THIRD DEFENSE

JELD-WEN took no tangible employment action against plaintiffs, retaliatory or otherwise.

## FOURTH DEFENSE

The statute of limitations has run on all or most of plaintiffs' claims against defendants.

## FIFTH DEFENSE

Plaintiffs failed to mitigate their damages.

## SIXTH DEFENSE

JELD-WEN, as a business necessity, decided to shut down the Roanoke facility on or before January 1, 2005. Thus, defendant alternatively pleads the After-Acquired Doctrine to any claim for damages occurring after the Roanoke facility shut down and all employees were laid off.

## SEVENTH DEFENSE

Because the Roanoke facility has been shut down, plaintiffs are not entitled to declaratory or injunctive relief or lost wages.

## EIGHTH DEFENSE

To the extent an affirmative defense, JELD-WEN pleads all applicable statutory caps on damages.

## NINTH DEFENSE

Plaintiffs' emotional damages, if any, were caused by issues and events unrelated to their workplace.

## TENTH DEFENSE

JELD-WEN denies all issues are triable by a jury.

## ELEVENTH DEFENSE

Plaintiffs' claims are barred by laches and/or estoppel.

## TWELFTH DEFENSE

JELD-WEN at all times acted in good faith and with reasonable grounds to believe that its actions did not violate the statutes cited in the Complaint and JELD-WEN is not liable for punitive damages because neither it nor any of its agents committed any unlawful acts with willful, malicious, or reckless indifference to the protected rights of plaintiffs, nor did JELD-WEN authorize or ratify any such practices.

## THIRTEENTH DEFENSE

To the extent plaintiffs' Complaint asserts or attempts to assert Title VII claims other than those raised in plaintiffs' EEOC charges, such claims cannot be maintained and are barred by plaintiffs' failure to meet the conditions precedent to bring such action, as well as for failure to exhaust administrative remedies.

## FOURTEENTH DEFENSE

To the extent plaintiffs allege that one or more of JELD-WEN's employees harassed any one of them or acted in an unlawful fashion towards any one of them, such conduct, if it occurred (and JELD-WEN denies that such conduct occurred), was outside of the course or scope of that individual's employment, was not condoned by JELD-WEN, was undertaken without the knowledge or consent of JELD-WEN, was not in the furtherance of JELD-WEN's business, and JELD-WEN did not participate in, authorize or ratify the conduct. Accordingly, JELD-WEN is not liable for such conduct, if it occurred.

## FIFTEENTH DEFENSE

JELD-WEN will rely upon all proper defenses lawfully available that may be disclosed by evidence, and it reserves the right to amend this Answer to state such defenses.

<u>SIXTEENTH DEFENSE</u>

To the extent applicable, all statements set forth below by JELD-WEN also constitute additional defenses.  JELD-WEN does not assume the burden of proof on any such defenses except as required by applicable law with respect to a particular defense asserted.

1.

JELD-WEN admits plaintiffs are suing under Title VII.  However, JELD-WEN denies it is liable to plaintiffs under Title VII.

2.

JELD-WEN admits plaintiffs are suing under state tort law.  However, JELD-WEN denies it is liable to plaintiffs under state tort law.

3.

JELD-WEN admits this Honorable Court has federal question jurisdiction and supplemental jurisdiction over plaintiffs' state tort claims.

4.

Denied in part.

5.

JELD-WEN laid-off all employees and ceased all operations at its Roanoke, Alabama facility in or before December, 2004.  JELD-WEN JELD-WEN is headquartered in Klamath Falls, Oregon.

6.

JELD-WEN admits it employed plaintiffs until they and all other employees were laid off.

7.

JELD-WEN's General Manager for the Roanoke facility was Pat Galvez and then, Dan Hees. Only JELD-WEN's General Manager or a higher ranking employee had the authority to make tangible employment decisions regarding plaintiffs. Thus, as a group leader, Mr. Fetner was neither a Title VII supervisor of plaintiffs nor a Title VII agent.

8-13.

Paragraphs 8-13 are denied. Plaintiff Minix was employed by a subsidiary of CMS Holding, Millwork Specialties, Inc., from April, 1991 to June, 1994. On September 12, 2001, Millwork Specialties, Inc. hired plaintiff Minix to work in its Machinery Department. In or before 2003, JELD-WEN acquired control of CMS Holding and thereafter began implementing stringent anti-harassment policies upon the subsidiaries of CMS Holding, including Millwork Specialties, Inc. On July 16, 2003, Minix alleged that she saw a co-worker (not defendant Fetner) do something extremely inappropriate in the workplace. After Minix reported this one-time incident, JELD-WEN investigated her complaints. During the investigation, the accused co-worker resigned. No tangible employment action was taken against Minix. In fact, JELD-WEN conducted additional

anti-harassment training for all employees of the Roanoke facility.  Minix did not file a civil suit or EEOC charge against JELD-WEN over this alleged co-worker sexual harassment and thus the statute of limitations upon this alleged allegation has run under both state and federal law.

14.

In or about 2000, Minix had a consensual, social relationship with defendant Fetner while Minix was employed by someone other than JELD-WEN.  Plaintiff Minix was hired by Millwork Specialties, Inc. on September 12, 2001.  In or before 2003, JELD-WEN acquired control of CMS Holding and thereafter began implementing stringent anti-harassment policies upon the subsidiaries of CMS Holding, including Millwork Specialties, Inc.  At 9:00 A.M. on October 13, 2004, plaintiff Minix complained to JELD-WEN for the first time about Fetner.  Plaintiff alleged Fetner touched her shoulder once, hugged her once, and asked Minix for a date.  After JELD-WEN interviewed Fetner about Minix's allegations, Fetner agreed to resign from his employment later that same day.

15-17.

Paragraphs 15-17 are denied.  On June 1, 2004, JELD-WEN hired Brenda Sims from a "temp agency" to work in the Machinery Department. At 9:00 A.M. on October 13, 2004, plaintiff Brenda Sims complained to JELD-WEN for the first time about Fetner.  Plaintiff Brenda Sims alleged

that Fetner would sometimes make her uncomfortable by standing too close to her and brushing against her while showing her how to perform a task.  After JELD-WEN interviewed Mr. Fetner about these allegations, defendant Fetner agreed to resign later that same day.

18-27.

Defendant denies paragraphs 18-27.  On June 7, 2004, JELD-WEN hired Linda Sims from a "temp agency" as a full-time employee to work in the Machinery Department.  At 9:00 A.M. on October 13, 2004, plaintiff Linda Sims complained to JELD-WEN, for the first time, that defendant Fetner made her uncomfortable by standing too close to her and somehow making it appear Linda Sims was sitting on his lap.  Linda Sims also complained that defendant Fetner expressed admiration for her posterior.  After JELD-WEN interviewed Mr. Fetner about these allegations, defendant Fetner agreed to resign later that same day.

28.

Denied.

29.

Denied.

30.

Denied.

31.

Denied.

32.

Denied.

33.

Denied.

34.

Denied as alleged.

35.

Admit.  Further, the EEOC rejected each charge by each plaintiff.

36.

Denied.

37.

Denied as alleged.

38.

Denied.

39.

Denied as alleged.

40.

JELD-WEN admits this Court has subject matter jurisdiction over this claim.

41.

Denied.

42.

Denied.

43.

Denied.

WHEREFORE, JELD-WEN, inc., prays that after due hearing, plaintiffs' case be dismissed, with prejudice, at the cost of plaintiffs; and for all other relief that the facts, law, and equity warrant.

Respectfully Submitted,

s/Michael L. Thompson THO152
Michael L. Thompson

OF COUNSEL:
SCOTT J. SCOFIELD (#14429)[1]
Scofield, Gerard,
Singletary & Pohorelsky
1114 Ryan Street
P. O. Drawer 3028
Lake Charles LA 70602
(337) 433-9436

---

[1] JELD-WEN, inc.'s Motion for Admission Pro Hac Vice is being served contemporaneously (albeit by U.S. Mail) with the service of this Answer. Although Mr. Scofield's appearance is subject to the Court's granting said motion, JELD-WEN is providing notice of Mr. Scofield's possible participation at the earliest possible date.

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James B. Douglas
McNeal & Douglas
P. O. Box 1423
Auburn AL 36831

Matthew W. White
Adams, Umback, Davidson & White, LLP
P. O. Box 2069
Opelika AL 36803-2069

Respectfully submitted,

s/Michael L. Thompson THO152
Michael L. Thompson
Lehr Middlebrooks Price &
Vreeland, P.C.
P.O. Box 11945
Birmingham, AL 35202-1945
Phone:  (205) 326-3002
Fax:  (205) 326-3008
E-mail: mthompson@lmpv.com
Bar No.: ASB-5417-O46M