IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **LORENA MINIX, BRENDA SIMS, and LINDA SIMS,** )<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>**JELD-WEN, inc.,** )<br>)<br>**Defendants.** )<br>) | **CIVIL ACTION NUMBER:**<br>**3:05-cv-00685-T** |

### DEFENDANT'S THIRD MOTION IN LIMINE - KATHY THORNTON

Pursuant to Rules 402, 403 and 404(b) of the Federal Rules of Evidence, JELD-WEN, inc. ("JELD-WEN"), Defendant in the above-referenced matter, respectfully requests that the Court exclude Kathy Thornton as a witness in this matter and, in the alternative, exclude any evidence that Ms. Thornton engaged in sexual intercourse with Richard Fetner at his home in 2004 as well as any evidence of sexually offensive conduct that Mr. Fetner allegedly directed towards her in the workplace. In support of said motion, JELD-WEN shows as follows:

*Factual Background*

1.  This is a sexual harassment case wherein the three Plaintiffs, all former employees at JELD-WEN's facility in Roanoke, Alabama, allege that they were sexually harassed by Richard Fetner, the plaintiffs' immediate supervisor at the facility. Plaintiffs allege that Mr. Fetner harassed them in their work area (i.e., the "day-do" room), the break room and in his office. See discussion infra.

2.  Plaintiffs listed Kathy Thornton as a person who they intend to call as a witness in this matter. See Plaintiffs' Witness List. Like the three Plaintiffs, Ms.

Thornton is a former employee of JELD-WEN who worked at its facility in Roanoke, Alabama, under the immediate supervision of Richard Fetner. Ms. Thornton also alleges that Mr. Fetner sexually harassed her prior to the termination of his employment. However, Ms. Thornton's harassment allegation is quite different than the Plaintiffs' allegation and she is not a party to this action.

3. Ms. Thornton alleges that Mr. Fetner harassed her on a regular basis <u>in the paint room</u> and that, on one occasion, she followed Mr. Fetner to his house after work and had sexual intercourse because she felt like it was her only option. Thornton, 94:5-11[1]. Ms. Thornton worked in the paint room at JELD-WEN's Roanoke facility. As illustrated on the attached drawing, the paint room was separated from the remainder of the facility by a wall and two doors. Thornton, 56:13–57:17; L. Sims, EX-13 (attached hereto as Exhibit B). Only one other employee worked in the paint room with Ms. Thornton but, according to Ms. Thornton, the other employee was not able to see her work area because a large paint drum blocked the line of sight between the two work stations. Thornton, 53:16–55:20. According to Ms. Thornton, employees outside the paint room could not see her and she was "secluded from everybody else." Thornton, 57:18–58:10, 82:13-18.

4. Ms. Thornton did not report Mr. Fetner's conduct until the October 13, 2004, group meeting with Dan Hees because she did not think that anyone would believe her allegation. Thornton, 120:13-19. Thornton is not aware of anyone who witnessed the harassing conduct that was allegedly directed towards her. Thornton, 96:17–97:6, 103:18-21. In fact, none of the Plaintiffs witnessed any of the conduct that

---

[1] Excerpts from Ms. Thornton's Deposition are attached as Exhibit A.

2

Fetner allegedly directed towards Thornton and their only knowledge of the conduct is based on what Ms. Thornton relayed to them:

> Q. Did you see any of this happen to Kathy Thornton
>
> A. No, no, I didn't.

Minix, 293:4-7.[2]

> Q. That [the conduct towards the Plaintiffs] all occurred in the dado room?
>
> A. Yeah. We were all back there, except for Kathy.

Minix, 294:4-7.

> Q. Did you ever work with Kathy Thornton?
>
> A. Not work with her, no.

B. Sims, 52:19-21.[3]

> A. I just know that [Kathy Thornton] was sexually harassed by Richard Fetner.
>
> Q. All right.
>
> A. He did some pretty horrible things.
>
> Q. Did you see that?
>
> A. No, sir, I didn't see that.

L. Sims, 41:20-42:3.[4]

Likewise, Ms. Thornton never witnessed any of the conduct that was allegedly directed at the Plaintiffs:

> Q. Okay. You understand that Ms. Minix, Ms. Sims, Ms. Linda Sims, and Ms. Brenda Sims, are making allegations of inappropriate sexual conduct by Mr. Fetner in this lawsuit; right?

---

[2] Excerpts from Ms. Minix's Deposition are attached as Exhibit C.
[3] Excerpts from Ms. B. Sim's Deposition are attached as Exhibit D.
[4] Excerpts from Ms. L. Sim's Deposition are attached as Exhibit B.

3

> A. Yes, sir.
>
> Q. Did you ever witness any of this conduct towards them by Mr. Fetner?
>
> A. No, sir. I thought it was just me.
>
> Q. You thought it was just you?
>
> A. Yes, sir.

Thornton, 88:6-17.

> Q Other than the conduct that Mr. Fetner allegedly directed towards you, did you ever witness any sexually inappropriate conduct at the JELD-WEN facility?
>
> A No.

Thornton, 88:22-89:4.

    5.    Ms. Thornton, along with the three Plaintiffs and Lisa Cook, met with Dan Hees on October 13, 2004. Thornton, 81:16-19. Unlike Ms. Cook, Ms. Thornton does not appear to recall anything relative to this meeting in addition to what is recalled by the three Plaintiffs:

> A. I'm not sure. I'm not sure what anybody said but me.
>
> Q. You don't remember what anybody said but you?
>
> A. Not enough to say it and it wasn't true or messed up.

Thornton, 83:15-20.

    6.    Ms. Thornton also allegedly told Group Manager Joe Mendoza that Fetner was "touching her and saying stuff." Thornton, 106:7-13. This allegedly occurred within a couple of months of October 2002, the date that Mendoza began working at JELD-WEN's Roanoke facility. Hees, 61:4-5, 61:15–62:1; Hees, ¶6[5]; Thornton, 106:1-3. Mr.

---

[5] Excerpts from Hees' deposition and his declaration are attached as Exhibit E.

4

Mendoza was not Ms. Thornton's immediate supervisor and was not a supervisor with successively higher authority over her. Thornton, 125:2-16. Thus, Mr. Mendoza was not a person designated to receive Ms. Thornton's complaints of harassment under JELD-WEN's sexual harassment policy. Hees, ¶7; Minix, EX-27.

7. Ms. Thornton also attended Rob Sturm's July 23, 2003, training session on sexual harassment. Thornton, 67:12 – 68:23. Her testimony on this issue would likely be cumulative of other witnesses.

*Argument and Authorities*

    a.    **The Alleged Conduct is Inadmissible Per Rule 404(b).**

Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Plaintiffs seek to introduce Mr. Fetner's alleged harassment of Ms. Thornton to demonstrate that his alleged conduct towards the Plaintiffs was in conformity with his conduct towards Ms. Thornton. Mr. Fetner's alleged conduct towards Ms. Thornton is not admissible for this purpose and none of the Rule 404(b) exceptions ("proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident") are applicable. Fetner's alleged conduct towards Thornton is not admissible because "alleged previous harassment cannot be used to show that a defendant harassed a plaintiff on a specific subsequent occasion." See Wilson v. Muckala, 303 F.3d 1207, 1217 (10th Cir. 2002) (affirming exclusion of evidence of past sexual harassment by defendant per Rules 401, 403 and 404(b)).

5

### b.   Ms. Thornton's Testimony is Irrelevant.

Even if Ms. Thornton's testimony is admissible under one of the Rule 404(b) exceptions, Ms. Thornton should be excluded as a witness in this matter because any testimony that she would be able to provide is irrelevant to the Plaintiffs' claims under Fed. R. Evid. 402. Both Ms. Thornton and the Plaintiffs clearly testified that the offensive conduct that Fetner allegedly directed towards Ms. Thornton was outside the presence of the Plaintiffs. See supra. The Plaintiffs claims in this action are that they were subjected to sexual harassment by Mr. Fetner. Ms. Thornton did not witness Mr. Fetner directing sexually offensive conduct towards the Plaintiffs and cannot offer testimony to support that the conduct actually occurred. Thornton, 88:6-17, 88:22–89:4.

Furthermore, any offensive conduct that Mr. Fetner allegedly directed towards Ms. Thornton was outside the presence of the three Plaintiffs – essentially, as alleged by Thornton, in private in the paint room and/or at Mr. Fetner's residence. Thornton, 96:17-97:6, 103:18-21. Accordingly, any such conduct was not witnessed by the Plaintiffs and cannot serve as the basis of the Plaintiffs' claim that they were subjected to a hostile work environment or that the Plaintiffs were otherwise subjected to sexual harassment. See Pospicil v. Buying Office, Inc., 71 F.Supp. 2d 1346, 1357 (N.D. Ga. 1999). (holding that a plaintiff cannot establish a hostile work environment based on the harassment of another employee where plaintiff is not aware of the harassment); Pryor v. Seyfarth, Shaw, Fairweather & Geraldson, 212 F.3d 976, 978 (7th Cir. 2000) (holding that harassment of other employees without "[the plaintiff's] knowledge, [ ] could not have altered her conditions of employment, and so she could not complain about that harassment under Title VII.") citing Burnett v. Tyco Corp., 203 F.3d 980, 981 (6th Cir.

2000) (refusing to consider evidence of sexual harassment against other employees because plaintiff was not aware of the alleged harassment); <u>Abeita v. TransAmerica Mailings, Inc.</u>, 159 F.3d 246, 249 n. 4 (6th Cir. 1998) (same); <u>Creamer v. Laidlaw Transit, Inc.</u>, 86 F.3d 167, 171 (10th Cir. 1996) ("Although 'evidence of a general work atmosphere, including evidence of harassment of other women, may be considered in evaluating a claim' of sexual harassment, the plaintiff 'may only rely on evidence relating to harassment of which she was aware during the time she was allegedly subject to a hostile work environment.'"); <u>Hirase-Doi v. U.S. West Communications, Inc.</u>, 61 F.3d 777, 782 (10th Cir. 1995) (holding that a plaintiff cannot subjectively perceive behavior as creating a hostile work environment unless she is aware of it and admitting only conduct that occurred in the plaintiff's office).  <u>But</u> <u>see</u> <u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1308, 1314-25 (11th Cir. 2001) (evidence of harassment of other employees admissible where it was clear that sexual harassment was the "ongoing, accepted practice" at the defendant employer and that the city commission, mayor, and other high ranking officials "knew of, ignored, and tolerated the harassment" such that sexual harassment was a "condoned custom" of the employer).

This case is about the Plaintiffs' claims and allegations that they were damaged by Mr. Fetner's conduct and that Mr. Fetner's former employer, JELD-WEN, is somehow liable despite its corrective action. <u>See</u> PreTrial Order.  Ms. Thornton has not asserted a claim in this matter and her allegations regarding Fetner's conduct towards her are entirely irrelevant to Plaintiffs' allegations.

Ms. Thornton also alleges that she told Group Manager Joe Mendoza that Mr. Fetner was directing inappropriate conduct towards her.  Thornton, 106:1-13.  Any

report to Mr. Mendoza was remote in time from Plaintiffs' allegations because Mr. Mendoza only worked at the Roanoke facility from October 2002 until October 2003 and Ms. Thornton alleges that she reported the conduct to Mr. Mendoza within the first couple of months that he was there. Thornton, 106:1-3; Hees, 61:4-5, 61:15 – 62:1; Hees, ¶6. Further, Mr. Mendoza was never Ms. Thornton's immediate supervisor nor was he ever the immediate supervisor of Ms. Minix, the only one of the three Plaintiffs whose tenure overlapped with Mendoza's. Thornton, 125:2-16. As Mr. Mendoza was not Ms. Thornton's immediate supervisor and was not a successive supervisor over her, any "report" to him of Mr. Fetner's alleged conduct is entirely irrelevant. Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1300 (11th Cir. 2000) ("[Employer] cannot be considered to have been placed on notice of [supervisor's] harassing behavior by plaintiff's informal complaints to individuals not designated by [employer] to receive or process sexual harassment complaints."); See also Cleveland v. KFC National Management Co., 948 F.Supp. 62, 66 (N.D. Ga. 1996) (excluding evidence of alleged harassment of other employees where there was no evidence that employer was aware of the harassment).

      **c.    Any Relevance of Ms. Thornton's Testimony is Substantially Outweighed by the Prejudicial Effect of the Testimony.**

Even if Ms. Thornton's harassment allegations were somehow relevant to Plaintiffs' claims, the probative value of admitting her allegations into evidence is substantially outweighed by the unfair prejudice that such admission will cause JELD-WEN. Simply put, the admission of Ms. Thornton's factual allegations would result in jury confusion related to (a) whether the trial in this matter relates to what allegedly happened directly to the Plaintiffs on the facility floor, in Mr. Fetner's office and other

conduct that they witnessed that contributed to the alleged hostile work environment or (b) whether the trial relates to what allegedly happened to Ms. Thornton at her work station – i.e., outside the presence of any other JELD-WEN employee – and at Mr. Fetner's residence. See Wilson, 303 F.3d 1207, 1217 (holding that other incidents of sexual harassment were irrelevant where they allegedly occurred in places outside the plaintiffs' work area). JELD-WEN will be required to defend against Ms. Thornton's allegations, including her allegation that she engaged in "consensual" sexual intercourse with Mr. Fetner at his residence one night after work, in the midst of defending against the Plaintiffs' allegations of conduct directed towards them. Thornton, 94:9-11, 172:3-7 (noting sex was "consensual"). The admission of such testimony would be patently unfair to JELD-WEN as any limited relevance the evidence has is substantially, if not completely, outweighed by the danger of unfair prejudice to JELD-WEN, confusion of the issues, that the jury will be mislead, and the unnecessary extension of the time to try this matter per Rule 403. Fed. R. Evid. 403.

Likewise, the character of the conduct that Ms. Thornton alleges is significantly more severe than that alleged by the three Plaintiffs. Minix alleges that Fetner would hug her and surreptitiously touch her breasts; that he would spank her bottom and that he invited her to go to his house for sex. Minix, 278:2 – 280:3, 282:16 – 284:14. Minix contends that Fetner's conduct all occurred in the dado machine area or in his office. Minix, 280:19 – 281:10. Brenda Sims contends that Fetner rubbed her leg on two occasions when she was in his office; that he touched her breast twice, once in the break room and once on the plant floor; and that he invited her to his house quite a few times. B. Sims, 150:17 – 151:19, 153:2 – 154:20, 160:12-14. Linda Sims does not

9

contend that Fetner ever touched her breast or other private area. L. Sims, 144:19 – 145:5. Rather, Linda Sims contends that Fetner hugged her; that he made comments regarding her bottom and the way that she moved; and that Fetner acted as though he intended to pinch her bottom although he did not do so and Linda Sims was unaware of his actions until sometime later. L. Sims, 134:3-23, 138:8 – 139:9.

Ms. Thornton, on the other hand, alleges significantly more egregious conduct by Mr. Fetner:

- Fetner grabbed her breasts and buttocks [Thornton, 87:16-22, 97:7-98:9],
- Fetner invited Thornton to his room [Thornton, 85:19-86:3],
- Fetner requested oral sex [Thornton, 101:9-102:3],
- Fetner stuck a broom handle up her shorts [Thornton, 100:11-101:7],
- Fetner asked her if he could suck her nipples [Thornton, 86:13-20], and
- Fetner would grab his privates and ask if Thornton "wanted some".

Thornton, 99:20-100:1. Thornton alleges that the "grabbing" of her breasts and buttocks occurred frequently, that Fetner invited her to his house daily and that other incidents occurred on multiple occasions (broom handle – two or three occasions; Fetner grabbing himself – seven to nine occasions) but less frequently. Id. The introduction of evidence regarding the significantly more severe conduct allegedly directed at Thornton would unfairly prejudice JELD-WEN, contrary to the provisions of Fed. R. Evid. 403 and is due to be excluded.

        d.    **Ms. Thornton's Remaining Testimony is Cumulative.**

Other than the testimony related to the alleged inappropriate conduct that Fetner directed towards her and the Mendoza information noted above, Ms. Thornton's

testimony is cumulative of the testimony (e.g., the October 13, 2004 meeting with Dan Hees) to be offered by other witnesses, including the Plaintiffs. As such there is no reason for trial time to be wasted with Ms. Thornton's testimony. See Fed. R. Evid. 403 (permitting exclusion of cumulative evidence).

      **e.    Reservation of Objection Related to Rule 415(b) Notice.**

JELD-WEN further reserves the right to object to the admission of any evidence encompassed by Fed. R. Civ. P. 415 based on Plaintiffs' failure to disclose same as required by Rule 415(b). Such disclosure had not been made as of the date this motion was submitted.

WHEREFORE, PREMISES CONSIDERED, JELD-WEN respectfully requests that the Court exclude Kathy Thornton as a witness in this matter and exclude any evidence related to her. Alternatively, JELD-WEN respectfully requests that the Court exclude any portion of Ms. Thornton's testimony, including information regarding the conduct that Fetner directed towards her, for this matter.

                              Respectfully Submitted,

                              s/Michael L. Thompson
                              Michael L. Thompson THO152

OF COUNSEL:
LEHR MIDDLEBROOKS & VREELAND, P.C.
P.O. Box 11945
Birmingham, Alabama 35202-1945
(205) 326-3002

Scott Scofield, Esq.
Scofield, Gerard, Singletary & Pohorelsky
1114 Ryan Street
P.O. Drawer 3028
Lake Charles, LA 70601
(337) 433-9436

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James B. Douglas, Jr., Esq.
McNeal & Douglas, Attorneys at Law, L.L.C.
P.O. Box 1423
Auburn, AL  36831

Matthew W. White, Esq.
Adams, Umbach, Davidson & White, LLP
P.O. Box 2069
Opelika, AL  36803-2069

Respectfully submitted,

s/Michael L. Thompson THO152
Michael L. Thompson THO152
Lehr Middlebrooks & Vreeland, P.C.
P.O. Box 11945
Birmingham, AL 35202-1945
Phone:  (205) 326-3002
Fax:  (205) 326-3008
E-mail: mthompson@lehrmiddlebrooks.com
Bar No.: ASB-5417-O46M

163848.doc