[DO NOT PUBLISH]

RECEIVED

2007 JUL 27  P 2:54

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16094
Non-Argument Calendar

_____

D. C. Docket No. 05-00685-CV-T-E

LORENA MINIX,
BRENDA SIMS,
LINDA SIMS,

                                        Plaintiffs-Appellants,

versus

JELD-WEN, INC.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(June 27, 2007)

Before TJOFLAT, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

Lorena Minix, Linda Sims, and Brenda Sims sued their former employer, Jeld-Wen, Inc., alleging claims for hostile-work-environment sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). They alleged that their immediate supervisor, Richard Fetner, made repeated and unwelcome sexual remarks to them and touched them inappropriately at various times throughout their employment.[1] Fetner's last harassing act occurred on August 1, 2004. Yet they did not report Fetner's behavior to officials at Jeld-Wen, Inc., until October 13, 2004. Upon investigation, Fetner promptly resigned, and the plant where Minix and the Simses worked was shut down shortly thereafter.

Following discovery, the district court granted summary judgment to Jeld-Wen, Inc., holding the company not vicariously liable for Fetner's harassment. The district court concluded that none of the plaintiffs suffered a tangible employment action and that Jeld-Wen, Inc., successfully established both elements of the vicarious-liability affirmative defense spelled out in Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998), and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998).[2] Minix and the Simses appeal.

---

[1] Minix's EEOC charge says that she was harassed by Fetner as early as September 1, 2001, but that Fetner's harassment ended by July 1, 2004. Linda Sims's EEOC charge says that she was harassed by Fetner between April 1, 2004, and August 1, 2004. Brenda Sims's EEOC charge says that she was harassed by Fetner between June 1, 2004, and August 1, 2004.

[2] For purposes of summary judgment only, Jeld-Wen, Inc., conceded in the district court (and concedes on appeal) that Fetner unlawfully harassed Minix and the Simses. Thus, in

On appeal, Minix and the Simses collectively argue:

First, that the Faragher/Ellerth affirmative defense to vicarious liability is inapplicable because Jeld-Wen, Inc., is directly liable for Fetner's harassment; its direct liability stemming from either

> (a)    the fact that the company had actual notice about Fetner's harassment of their co-worker, Kathy Thornton, yet failed to take remedial action, or
>
> (b)    the fact that the company had constructive notice of Fetner's harassing behavior toward multiple female employees, yet failed to take remedial action.

Second, that Jeld-Wen, Inc., is vicariously liable for Fetner's harassment and not entitled to avail itself of the Faragher/Ellerth affirmative defense because

> (a)    Jeld-Wen, Inc., did not exercise reasonable care to prevent and promptly correct Fetner's behavior; and
>
> (b)    Minix and the Simses reasonably complied with the reporting provisions of the company's anti-harassment policy.

Linda Sims separately argues that, with respect to her claim, Jeld-Wen, Inc.,

---

resolving Jeld-Wen, Inc.'s summary-judgment motion, the district court focused exclusively on the issue of liability. Likewise, Jeld-Wen, Inc.'s liability is the only issue before us in this appeal.

cannot avail itself of the Faragher/Ellerth affirmative defense because the harassment she suffered resulted in a tangible employment action.

We will address each argument in turn.

## I. STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment, applying the same standard that bound the district court and viewing the evidence and all reasonable inferences in the light most favorable to the non-moving parties. See Drago v. Jenne, 453 F.3d 1301, 1305 (11th Cir. 2006). "Summary judgment is appropriate when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'" Id. (quoting Fed.R.Civ.P. 56(c)).

## II. DIRECT LIABILITY

### A. Actual Notice

Minix and the Simses first argue that Jeld-Wen, Inc., actually knew about Fetner's harassment, yet failed to take steps to remedy it. If that is true, then Jeld-Wen, Inc., is directly liable for the harassment on the basis of its own negligence. See Ellerth, 524 U.S. at 759, 118 S. Ct. at 2267 ("[A]n employer can be liable [for a supervisor's sexual harassment] where its own negligence is a cause of the harassment. An employer is negligent with respect to sexual harassment if it knew

4

or should have known about the conduct and failed to stop it."); see also Dees v. Johnson Controls World Servs. Inc., 168 F.3d 417, 421 (11th Cir. 1999). To support their argument, Minix and the Simses say that their co-worker, Kathy Thornton, who worked under Fetner and who was also sexually harassed by him, reported Fetner's harassment to fellow employee Joe Mendoza as early as September 2003. Because Mendoza was told of Fetner's harassment, Minix and the Simses reason that Jeld-Wen, Inc., itself had actual notice of it and should be held liable for not preventing Fetner's further harassment.

At all relevant times, Jeld-Wen, Inc., maintained a written anti-harassment policy.[3] That policy required that complaints of sexual harassment be reported to

---

[3] Jeld-Wen, Inc.'s anti-harassment policy stated as follows:

> JELD-WEN strives to provide a productive and comfortable working environment free from harassment or discrimination including that which may be construed to be offensive sexual conduct. This policy applies to every aspect of the employment relationship throughout the organization and to the dealings of employees with one another, as well as with vendors and customers.

> Harassment in any form will not be tolerated by the company. Any employee who violates this policy is subject to discipline up to and including discharge. In addition, any client, customer or vendor of the company who engages in such conduct will be informed of our policy and will be dealt with accordingly, with the aim of completely eliminating the harassment.

> Harassment includes, but is not limited to, the following behaviors, if such behaviors create an intimidating, hostile or offensive environment:

> - Verbal Harassment: Derogatory comments, jokes, slurs or abusive language

5

the harassed employee's "immediate Supervisor" or to the harassed employee's

- Physical Harassment: Unwanted physical contact or assault.
- Visual Harassment: Leering, making sexual gestures, displaying derogatory or sexually suggestive objects, pictures, posters, cartoons, drawings, or clothing printed with derogatory material.
- Sexual Harassment: Unwelcome sexual advances, request for sexual favors, offering employment benefits in exchange for sexual favors, or any other verbal or physical conduct of a sexual nature that is directed toward an individual because of that person's gender.

Employees will be made aware of this policy and are encouraged to not tolerate harassment. Any employee who believes that he/she is being subject to objectionable conduct should promptly notify either their immediate Supervisor, their General or Corporate Manager, Vice President or Subsidiary President, or the Legal Department at (541) 882-3451. Any Supervisor, General or Corprorate Manager, Vice President or Subsidiary President, who has questions concerning harassment complaints shall contact the Legal Department. Additionally employees are encouraged to report any conduct they may witness against someone else, whether verbal, visual, physical, sexual, or otherwise, that they believe constitutes harassment. They should follow the same steps of contacting their immediate Supervisor, their General or Corporate Manager, Vice President, Subsidiary President, or Legal Department.

Every complaint of harassment will be investigated promptly, thoroughly, fairly, and objectively. A written investigative report will be completed for each complaint. The investigator will take detailed statements from the person making the complaint, the alleged harasser, the harassee, and the witnesses. The complaint will be kept as confidential as possible: information will be disseminated on a "need-to-know" basis only. Basic results of the investigation will be reported to the individual registering the complaint.

If the information collected during the investigation establishes that harassment or other objectionable conduct did occur, disciplinary action will be promptly taken against the harasser, up to and including termination if appropriate. Employees will not be discriminated or retaliated against for reporting harassment or participating in an investigation.

6

"General or Corporate Manager, Vice President or Subsidiary President" or to a member of the Jeld-Wen, Inc., "Legal Department." Mendoza, however, was a Group Manager — i.e., a foreman — of a six-employee department that did not include Thornton. Thus Mendoza was not Thornton's supervisor — immediate or otherwise. Nor was Mendoza a "General or Corporate Manager, Vice President or Subsidiary President," or a member of the "Legal Department." Accordingly, Mendoza was not one of the persons specifically designated by Jeld-Wen, Inc.'s anti-harassment policy to receive harassment complaints. This fact is dispositive of Minix and the Simses' "actual notice" argument.

We held in Coates v. Sundor Brands, Inc. that when an employer promulgates an adequate and reasonable anti-harassment policy the employer "itself answer[s] the question of when it [is] deemed to have notice of the harassment sufficient to obligate it or its agents to take prompt and appropriate remedial measures." 164 F.3d 1361, 1364 (11th Cir. 1999). And we said in Madray v. Publix Supermarkets, Inc. that once an anti-harassment policy has been effectively disseminated to an employer's employees "it is incumbent upon the employees to utilize the procedural mechanisms established by the company specifically to address the problems and grievances." 208 F.3d 1290, 1298-99 (11th Cir. 2000) (citation omitted). We concluded in Madray that the employer did

7

not have actual notice of sexual harassment because the aggrieved employee brought her complaints "to individuals <u>not designated</u> by [the employer] <u>to receive or process sexual harassment complaints</u>." <u>Id.</u> (emphasis added). In this case, when Thornton complained about Fetner to Mendoza — who, again, was not her immediate supervisor and did not hold a management position mentioned in the anti-harassment policy — she, like the employee in <u>Madray</u>, complained to an individual "not designated [by Jeld-Wen, Inc.] to receive or process sexual harassment complaints."[4] <u>Id.</u> Accordingly, we conclude that Thornton's complaint to Mendoza did not put Jeld-Wen, Inc., on actual notice of Fetner's sexual harassment, and the company cannot be held directly liable on that ground. <u>See</u> <u>id.</u> at 1294 n.3

## B. Constructive Notice

Minix and the Simses next argue that Jeld-Wen, Inc., should be charged with constructive notice of Fetner's harassing behavior because "Fetner was harassing six female employees simultaneously." Appellants' Br. at 17. As a general rule, constructive notice of sexual harassment, when combined with a failure to act, is

---

[4] We reject as without merit the argument made by Minix and the Simses that Jeld-Wen, Inc.'s anti-harassment policy is ambiguous with respect to identifying those officials authorized to receive harassment complaints; specifically, their argument that a jury could reasonably conclude that Mendoza's status as a manager — albeit a Group Manager — meant that he too was designated by the policy to receive harassment complaints. Under the policy's plain terms the only managers designated to receive complaints are General Managers and Corporate Managers. Mendoza was neither.

sufficient to impose direct liability on an employer based on the employer's own negligence "when the harassment was so severe and pervasive that management reasonably should have known of it." Watson v. Blue Circle, Inc., 324 F.3d 1252, 1259 (11th Cir. 2003). But in this case Minix and the Simses cannot rely on constructive notice as a basis for holding Jeld-Wen, Inc., directly liable for Fetner's harassment. That is because, as noted above and as discussed below in the context of the Faragher/Ellerth affirmative defense, Jeld-Wen, Inc., had in place at the time of Fetner's harassment an effectively disseminated written anti-harassment policy. The presence of that written policy forecloses resort to constructive notice as a means of establishing the notice required for direct liability. See Dees, 168 F.3d at 422 (stating that "in regard to the direct liability standard . . . the employer's notice of the harassment is of paramount importance" and that actual or constructive notice "is required for direct liability").

We held in Farley v. American Cast Iron Pipe Co. that "once a company has developed and promulgated an effective and comprehensive anti-sexual harassment policy, aggressively and thoroughly disseminated the information and procedures contained in the policy to its staff, and demonstrated a commitment to adhering to this policy, it has fulfilled its obligation to make reasonably diligent efforts to 'know what is going on' within the company." 115 F.3d 1548, 1554 (11th Cir.

9

1997).  In <u>Farley</u> we concluded as a matter of law that "an employer is insulated from liability under Title VII for a hostile environment sexual harassment claim <u>premised on constructive knowledge</u> of the harassment when the employer has adopted an anti-discrimination policy that is comprehensive, well-known to employees, vigorously enforced, and provides alternative means of redress." <u>Id.</u> (emphasis added).

Minix and the Simses argue that the <u>Farley</u> rule does not apply in this case. For support, they cite on our decision in <u>Watson v. Blue Circle, Inc.</u>, a hostile-environment sexual harassment case in which we determined that the district court erred when it relied on the <u>Farley</u> rule as a basis for granting summary judgment to the employer.  324 F.3d 1252, 1259 (11th Cir. 2003).  The district court erred, we held, because there was a disputed issue of fact about whether "[the employer] ha[d] an <u>effective</u> sexual harassment policy." <u>Id.</u> (emphasis added).  Our decision in <u>Watson</u> turned on the questionable effectiveness of the employer's anti-harassment policy and is, for that reason, distinguishable from this case.  <u>See also</u> <u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1279-80 (11th Cir. 2002) (refusing to apply the <u>Farley</u> rule where the anti-harassment policy at issue was not "either comprehensive or effective").

Our holdings in <u>Watson</u> and <u>Miller</u> were compelled by <u>Farley</u>'s recognition

10

that "[w]here there is no policy, or where there is an <u>ineffective or incomplete</u> policy, the employer remains liable for conduct that is so severe and pervasive as to confer constructive knowledge." <u>Farley</u>, 115 F.3d at 1554 (emphasis added). Here, in contrast to <u>Watson</u> and <u>Miller</u>, Jeld-Wen, Inc., had in place an anti-harassment policy that was both comprehensive and vigorously enforced. It was neither incomplete nor ineffective.[5]  Consequently, the <u>Farley</u> rule applies and Minix and the Simses cannot establish liability against Jeld-Wen, Inc., on the basis of the company's constructive notice of Fetner's harassment.

## III.  VICARIOUS LIABILITY

Direct liability to the side, Minix and the Simses argue that Jeld-Wen, Inc., is vicariously liable for Fetner's harassment.  Generally, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate . . . authority over the employee." <u>Ellerth</u>, 524 U.S. at 765, 118 S. Ct. at 2270.  If the harassing supervisor takes a tangible employment action against the victimized employee, the employer will be vicariously liable to the employee without the benefit of a

---

[5] For the reasons stated by the district court in its summary-judgment order, we reject the argument advanced by Minix and the Simses that Jeld-Wen, Inc.'s anti-harassment policy was rendered ineffective by the fact that two company officials reached different conclusions about whether particular conduct would suffice to constitute sexual harassment under the policy.

legal defense.[6] See id. at 762-63, 118 S. Ct. at 2269; see also Dees, 168 F.3d at

422; see also Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1311 (11th

Cir. 2001) ("[W]hen a supervisor engages in harassment which results in an

adverse 'tangible employment action' against the employee, the employer is

automatically held vicariously liable for the harassment.").

But "[w]hen no tangible employment action is taken, a defending employer

may raise an affirmative defense to liability or damages." Ellerth, 524 U.S. at 765,

118 S. Ct. at 2270. The Faragher/Elerth vicarious-liability defense "comprises

two necessary elements: (a) that the employer exercised reasonable care to prevent

and correct promptly any sexually harassing behavior, and (b) that the plaintiff

employee unreasonably failed to take advantage of any preventive or corrective

opportunities provided by the employer or to avoid harm otherwise." Id. The

employer has the burden of proving each element by a preponderance of the

evidence. Id.

## A. Reasonable Care to Prevent and Correct Harassment

To establish the first element of the Faragher/Ellerth affirmative defense,

Jeld-Wen, Inc., must show that it "exercised reasonable care to prevent and correct

---

[6] Linda Sims argues below that Fetner subjected her to a tangible employment action, thus making Jeld-Wen, Inc., automatically vicariously liable to her and rendering the Faragher/Ellerth defense inapplicable. For the reasons stated below, we reject this argument.

promptly any sexually harassing behavior." Ellerth, 524 U.S. at 765, 118 S. Ct. at

2270.  Although "an employer's showing that it has a sexual harassment policy

does not automatically satisfy" the first element of the Faragher/Ellerth defense,

Frederick, 246 F.3d at 1314, the presence of such a policy is nevertheless a highly

relevant factor, and we have consistently held that where an employer promulgates

a comprehensive anti-harassment policy — one that is effectively communicated to

employees and that contains reasonable complaint procedures — the employer has

satisfied its burden on the prevention prong of the first element.[7]  See Baldwin v.

Blue Cross/Blue Shield, 480 F.3d 1287, 1303 (11th Cir. 2007); Walton v. Johnson

& Johnson Servs., Inc., 347 F.3d 1272, 1287 (11th Cir. 2003); Madray, 208 F.3d at

1298-99.

   At all relevant times, Jeld-Wen, Inc., maintained a comprehensive anti-

harassment policy that was effectively communicated to its employees, including

Minix and the Simses.  In addition to having received a copy of the policy when

they were hired, Jeld-Wen, Inc.'s employees received extensive training about the

policy in the summer of 2003 in the wake of Minix's complaint of sexual

---

[7] "The first element of the Faragher/Ellerth affirmative defense requires that an employer demonstrate that it took reasonable care both to prevent and correct harassment." Frederick, 246 F.3d at 1314.  Neither Minix nor the Simses argue that Jeld-Wen, Inc., failed to promptly remedy Fetner's harassment.  We conclude, as discussed below, that Jeld-Wen, Inc., has satisfied the remedial prong of the first element of the Faragher/Ellerth defense.

13

harassment against fellow employee Ronald Bowen.[8] That training was conducted by Rob Sturm, Senior Corporate Counsel in Jeld-Wen, Inc.'s in-house legal department. Minix and the Simses attended the training session and were well aware of the policy's terms and its reporting provisions. There is no dispute about the fact that the policy was effectively distributed to the company's employees or that Minix and the Simses understood its requirements.

The policy is very explicit about the manner in which perceived harassment is to be reported. The policy expressly identifies five categories of workers (and one entire corporate department) to whom sexual harassment complaints must be brought. In relevant part, the policy states: "Any employee who believes that he/she is being subject to objectionable conduct should promptly notify either their immediate supervisor, their General or Corporate Manager, Vice President or Subsidiary President, or the Legal Department." The policy lists the telephone number of the Legal Department.

Minix and the Simses say that Jeld-Wen, Inc.'s anti-harassment policy was

---

[8] Upon investigation into Minix's complaint against Bowen, Bowen promptly resigned from Jeld-Wen, Inc. Following Minix's complaint about Bowen, which Minix first made on June 27, 2003, Bowen continued to work at the plant for about three weeks while the investigation was being conducted, until his abrupt resignation on July 23, 2003. Despite the fact that Minix's problem with Bowen was resolved almost immediately, Minix maintains that she was dissatisfied with the company's response. In our view, however, Jeld-Wen, Inc.'s swift response demonstrates that the company vigorously enforced its anti-harassment policy. Minix's complaint against Bowen forms no part of this case.

not effective (and therefore cannot be relied upon to establish the prevention prong of the first element of the <u>Faragher/Ellerth</u> defense) because it was incapable of being vigorously enforced.  They insist that the policy's major shortcoming — its vagueness and indefiniteness — is evidenced by the fact that two corporate officials held different views about whether certain conduct would violate the policy.  They also insist that Jeld-Wen, Inc., does not take sexual harassment seriously, and this, they say, is evidenced by the fact that Fetner, upon his resignation, received roughly $8,000 in severance pay to which he was not entitled under company rules.  We are not persuaded that either of these facts undermines the effectiveness of the anti-harassment policy.

Any argument that the policy was rendered ineffective due to reasonable disagreements about the scope of its coverage, or that the company did not take harassment seriously, is fatally undermined by the thorough and comprehensive investigations undertaken by Jeld-Wen, Inc., to determine the veracity of the allegations against both Bowen (in 2003) and Fetner (in 2004).  The investigations that were conducted — the effectiveness of which cannot be doubted, given that both resulted in the near-immediate resignations of the alleged harassers — clearly demonstrate that Jeld-Wen, Inc., vigorously and systematically enforced its anti-harassment policy in an effort to honor its pledge, stated in the policy itself, that

"[h]arassment in any form will not be tolerated by the company."

We conclude that Jeld-Wen, Inc., has established the first element of the Faragher/Ellerth defense — that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." Ellerth, 524 U.S. at 765, 118 S. Ct. at 2270.

## B. Compliance with the Anti-Harassment Policy

To establish the second element of the Faragher/Ellerth defense, Jeld-Wen, Inc., must show that Minix and the Simses unreasonably failed to take advantage of the anti-harassment policy's complaint procedures or otherwise failed to avoid harm. See Frederick, 246 F.3d at 1315. According to the EEOC charges filed by the plaintiffs, the Simses were last harassed by Fetner on August 1, 2004, and Minix was last harassed by Fetner on July 1, 2004. Yet they did not report Fetner's harassment to any company official specifically designated by the anti-harassment policy until months later on October 13, 2004.[9] That is the date on which the plaintiffs met with Dan Hees, a Coordinating General Manager at Jeld-Wen, Inc. Hees was one of the policy-designated officials authorized to receive sexual harassment complaints.

The Court in Ellerth stated that, although it is not strictly necessary,

---

[9] Before that date, they did not report Fetner's harassment to anyone — a policy-designated official or otherwise — at Jeld-Wen, Inc.

16

an employee's "<u>unreasonable</u> failure to use any complaint procedure provided by

the employer . . . will normally suffice to satisfy the employer's burden under the

second element of the defense." 524 U.S. at 765, 118 S. Ct. at 2270 (emphasis

added). With that principle in mind, we have held that an employee unreasonably

fails to take advantage of her employer's complaint procedures if she does

"not us[e] the procedures in place <u>to promptly report</u> any harassment." <u>Baldwin</u>,

480 F.3d at 1306 (emphasis added). We explained that, absent an extreme

situation, a failure to promptly report the harassment "is sufficient to establish the

second element of the [<u>Faragher/Ellerth</u>] defense." <u>Id.</u> at 1306, 1307.

In <u>Baldwin</u>, we emphasized that the harassed employee was under a "prompt

reporting duty" — a duty expressly imposed by her employer's anti-harassment

policy and by "the prophylactic rules the Supreme Court built into Title VII in the

<u>Faragher</u> and <u>Ellerth</u> decisions." <u>Id.</u> We held that the employee "waited too late to

complain" about the harassment she had been subjected to because "[h]er

complaint came three months and two weeks after the first proposition incident and

three months and one week after the second one." <u>Id.</u> at 1307. The employee in

<u>Baldwin</u> failed to comply with her reporting duty, we noted, because her

complaints were "anything but prompt, early, or soon." <u>Id.</u>

The same is true here. Title VII and the explicit terms of Jeld-Wen, Inc.'s

17

anti-harassment policy placed Minix and the Simses under a "prompt reporting duty" just like the reporting duty we discussed in <u>Baldwin</u>. In fact, using identical language, Jeld-Wen, Inc.'s policy says that an aggrieved employee "should <u>promptly notify</u>" an appropriate company official about any "objectionable conduct" she experiences. (Emphasis added.) Minix did not promptly notify any appropriate company official about Fetner's harassment. Her complaint to Dan Hees, made on October 13, 2004, came roughly three years after she claims to have been first harassed by Fetner. Nor did the Simses promptly notify any appropriate company official about Fetner's harassment. Their complaint to Hees, also made on October 13, 2004, came six months and two weeks after Linda Sims claims to have been first harassed by Fetner and four months and two weeks after Brenda Sims claims to have been first harassed by him. Like the employee in <u>Baldwin</u>, Minix and the Simses "wait[ed] too late to complain" and therefore unreasonably failed to comply with the reporting requirement set forth in Jeld-Wen, Inc.'s anti-harassment policy.[10] We conclude that Jeld-Wen, Inc., has successfully established the second element of the <u>Faragher/Ellerth</u> defense.

---

[10] Minix, for her part, explains that her decision to wait so long to complain about Fetner's harassment was reasonable based on her dissatisfaction with the way Jeld-Wen, Inc., handled her complaint against Bowen in 2003. Jeld-Wen, Inc., however, launched an immediate investigation into Minix's complaint against Bowen, and he abruptly resigned mere weeks after her complaint was made. Because Jeld-Wen, Inc.'s response to the Bowen complaint was beyond reproach, we reject Minix's reasonable-delay argument as wholly without merit. The Simses offer no reason for their delay.

## IV.  TANGIBLE EMPLOYMENT ACTION

Finally, Linda Sims argues that Jeld-Wen, Inc., cannot avail itself of the Faragher/Ellerth defense because she was subjected to a tangible employment action.  See supra at 11-12.  In opposition to Jeld-Wen, Inc.'s motion for summary judgment, Sims argued that when she rebuffed Fetner's sexual advances, Fetner ordered another employee to send Sims home from work, thus reducing the number of hours she could work and the amount of money she could earn.[11] This, she said, constituted a tangible employment action because it affected the terms and conditions of her employment.  The district court recognized that Sims's allegation amounted to a tangible employment action, but rejected this as a basis for recovering against Jeld-Wen, Inc.  The court held that Sims could not show a causal connection between Fetner's harassment and the fact that she was sent home early from work — events that the district court determined occurred nearly two months apart from each other.

We too reject Sims's Title VII claim to the extent that it is premised on the

---

[11] Jeld-Wen, Inc., says that Sims failed to make this argument in the district court and that we should, for that reason, reject it on appeal.  Although the argument was made in the district court (albeit not forcefully), for the reasons discussed below, we reject it because Sims did not allege a tangible employment action in either her EEOC charge or in her complaint; she made the allegation for the first time in opposition to summary judgment — which, even if Title VII did not contain an exhaustion requirement, would be too late.  See Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1313 (11th Cir. 2004).

19

occurrence of a tangible employment action. We do so because Sims did not

allege facts in her EEOC charge from which it could be reasonably inferred that

Fetner took a tangible employment action against her.[12] Instead, the facts alleged

in Sims's EEOC charge demonstrate that she was alleging discrimination against

Jeld-Wen, Inc., solely under a hostile-environment theory. These are the only facts

alleged in Sims's EEOC charge:

> I began my employment during April of 2004 as a Router. Almost
> from the beginning of my employment I have been subjected to sexual
> harassment from the plant manager consisting of sexual comments
> regarding my body parts, requests to go out on dates, touching my
> body around the waist, placing his arms around me and pulling me
> close to his body. He often referred to my buttocks as basketballs and
> he would say he wanted to go dribbling. I rejected the harassment but
> it continues. I believe I am being discriminated against because of my
> sex, female, in violation of Title VII of the Civil Rights Act of 1964,
> as amended.

As is clear from her EEOC charge, Sims did not allege that her refusal to submit to

Fetner's sexual demands culminated in a tangible employment action — e.g.

a reduction in hours[13] — the very allegation she is now pursuing judicially.

"The starting point of ascertaining the permissible scope of a judicial

complaint alleging employment discrimination is the administrative charge and

---

[12] Nor did Sims make such an allegation in her judicial complaint. Rather, Sims made this allegation for the first time in her brief in opposition to summary judgment.

[13] See Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1231 (11th Cir. 2006).

20

investigation." <u>Alexander v. Fulton County, Ga.</u>, 207 F.3d 1303, 1332 (11th Cir. 2000). "No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge." <u>Id.</u> "EEOC regulations provide that charges should contain, among other things, '[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." <u>Id.</u> "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." <u>Id.</u> (internal quotation marks omitted.)

Although we have stated that "the scope of an EEOC complaint should not be strictly interpreted," we have also been careful to "caution[] that allegations of new acts of discrimination are inappropriate." <u>Gregory v. Ga. Dep't of Human Resources</u>, 355 F.3d 1277, 1279-80 (11th Cir. 2004). We will consider judicial claims only if they "amplify, clarify, or more clearly focus the allegations in the EEOC complaint." <u>Id.</u> at 1279. We must ask, then, whether the claims pursued in the judicial proceeding are "like or related to, or grew out of, the allegations contained in [the employee's] EEOC charge." <u>Id.</u> at 1280.

An allegation of harassment premised on a supervisor's tangible employment action is not "like or related to" and does not "gr[o]w out of" an

allegation of harassment premised solely on the existence of a hostile working environment. Those theories are wholly distinct and represent entirely different ways of demonstrating a violation of Title VII. Consequently, Sims's new allegation that Fetner took a tangible employment action against her does not in any way "amplify, clarify, or more clearly focus" any of the hostile-environment allegations made in her EEOC charge. Rather, Sims's tangible-employment-action allegation is an "allegation[] of [a] new act[] of discrimination" that we have said is "inappropriate" where, as here, it has not been alleged in a previous EEOC charge. See Gregory, 355 F.3d at 1279-80; see also Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 503 (7th Cir. 1994) ("When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge.").

To the extent that Sims attempted to rest her Title VII claim in the district court on a tangible employment action by Fetner, the claim was not properly before the court because allegations of such a claim were never made the subject of an EEOC charge of discrimination — a prerequisite to suit.[14]

---

[14] We may affirm the judgment of the district court for any reason supported by the record. See United States v. $121,100.00 in U.S. Currency, 999 F.2d 1503, 1507 (11th Cir. 1993).

## V. CONCLUSION

For the reasons stated above, we affirm the judgment of the district court.

**AFFIRMED.**

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia